Gareth RODMAN and Louise Rodman, Appellants (Plaintiffs Below),

v.

The CITY OF WABASH and the Municipal Works Board of the City of Wabash, Appellees (Defendants Below).

No. 4-1085A300.

Court of Appeals of Indiana, Fourth District.

Sept. 4, 1986.

Rehearing Denied Nov. 12, 1986.

John Johnston, Johnston Lehman & Guenin, Wabash, for appellants.

Robert E. Magley, Wabash, for appellees.

MILLER, Judge.

Gareth and Louise Rodman filed negligence, contract, nuisance, and inverse condemnation causes of action against the City of Wabash (City) and the Municipal Works Board of the City of Wabash (Board) for injuries sustained as a result of repeated raw sewage back up into the Rodmans' basement from the city-owned and maintained sanitary and storm sewer system. The defendants filed a motion for summary judgment which was granted by the trial court on grounds that the City's acts, in installing and maintaining the sewer lines to the Rodman property, were not of such a nature as to affect the Rodmans in a manner different in kind from the effect on others' property. The trial court also concluded that the City and the Board had no special relationship with, nor owed any specific duty to, the Rodmans.

On appeal, the Rodmans claim the trial court erred in finding that the defendants' acts in installing and maintaining the sewer lines to the Rodmans' home were not of such a nature to affect the Rodmans in a manner different in kind from the effect on others' property, and in concluding that the City and the Board had no special relationship with, nor owed a specific duty to, the Rodmans. We find the City's decision to install the sewer system was the performance of a discretionary function and no liability attaches under the Indiana Tort Claims Act. IND.CODE 34–4–16.5–3(6). We further find that the City owed a duty of reasonable care to all sewage drain users as a class and no special duty to the Rodmans as individuals.

The Rodmans also claim the trial court erred in not finding an implied contract to furnish adequate sewer service which the City breached by permitting the system to exceed its capacity. We find that even if an implied contract existed between the Rodmans and the City, its terms and conditions are so vague and indefinite as to prevent enforcement.

Finally, the Rodmans argue that the City has "taken" their basement as an integral part of its sewage system and is required to pay just compensation for the taking of private property for public use. We find the Rodmans waived their claim to compensation by proceeding with the purchase of the home with actual knowledge of the previous sewage back ups. The trial court correctly concluded no genuine issue of material fact existed and granted summary judgment to the City.

We affirm.

## FACTS

Gareth and Louise Rodman purchased their home at 997 North Wabash Avenue,

Wabash, Indiana in April of 1979. Before purchase the Rodmans inspected the basement and observed stains on the walls from previous sewage back ups. A city ordinance requires all drains to be connected with the city sewers if located on a street or alley accessible to the city sewer. The Rodmans' home was connected to a combined sanitary and storm water sewer at purchase. The City of Wabash and the Municipal Works Board of the City of Wabash owned, operated, and maintained the sewer system and charge the Rodmans and other homeowners for the sewage services provided to their property.

In the years before 1960, the City had combined storm water and sanitary sewers which discharged without treatment directly into the Wabash River or into creeks and eventually into the Wabash River. When these sewers were constructed is unknown, but they have been in existence and utilized for a number of years. In 1958, the City recognized the existing untreated sewage was a health problem and implemented engineering studies necessary to bring the system into compliance with health codes. It was not economically feasible to replace all of the combined sewers with new, separated sanitary sewers. Consequently, most of the sewers in the older sections of the city remained combined but were utilized in the overall system. In 1960, the City constructed two waste water treatment plants, interceptor sewers with lift stations, and allied facilities to transport the effluent flow from the existing sewer system to one of the new treatment plants.

Pat Ragan, Superintendent of Public Works for the City, admitted the combined sewer was not large enough to carry both sanitary sewage and storm water, and the sewer system had been inadequate for many years. During moderate to heavy rainfall, the combined system became full and water could not flow freely. Water and sewage backed up into homeowners' basements creating reservoirs which hold a small portion of the volume of water and sewage until the system can handle it. The City does not dispute the inadequacy of the

sewer system or the amount of rainfall required to cause a backup.

Six times from the spring of 1980 through the spring of 1983, city sewers have backed up into the Rodmans' basement through a commode. The raw sewage contains human waste. Rodman repeatedly notified the City, orally and in writing, of the backup problems. Rodman also submitted a written claim to the City's insurance company. Pat Ragan, Superintendent of Public Works, inspected the Rodman basement and the sewers in that area, advising Rodman to install a shut-off valve to prevent back up at a cost of less than $100.00. The Rodmans' neighbor installed a shut-off valve and had no further back ups. Rodman did not purchase and install a shut-off valve.

In 1980, the City conducted a study of the sewage system which revealed ten (10) areas of the city with infiltration problems. A special study of the sewer serving the Rodmans revealed that the ten inch deep sewer has a bottom elevation of 744.82 and the Rodman basement's deepest elevation is 747.44. The study also showed a crack in the sewer near Charlie Creek, which was repaired in 1980 or 1981.

The overall sewage treatment facilities of the City meet state standards despite the ten areas with infiltration problems. The City's plans to separate the combined sewers and to increase the sewage treatment plant's secondary capacity at a cost of $4,000,000 are being reviewed by the Indiana State Board of Health.

The trial court granted the City's motion for summary judgment in the following decree:

"This matter comes before the court on the Motion for Summary Judgment filed January 30, 1985. . . .

The Court now having taken the Motion for Summary Judgment under advisement and having reviewed the pleadings affidavits and matters before the Court now finds that the acts of the Defendant in installing and maintaining the sewer lines to the Plaintiff property, and other residents of Wabash, Indiana, was not of

such a nature that it will effect [sic] the Plaintiffs, or any other resident, in a manner different from the way that it effects [sic] the property of any other owner who also utilizes the city sewers. Because of such finding the Court concludes that the Defendants had no special relationship with, nor owed any specific duty to, the Plaintiffs as individuals that would give rise to liability on the part of the Defendants for the damages which are alleged to have been incurred by the Plaintiffs in their complaint.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that there is no genuine issue of material fact as to the existence of a duty on the part of the Defendants owed to the Plaintiffs and that the Defendants are entitled to Summary Judgment as a matter of law in their favor and against the Plaintiffs.

Costs against the Plaintiffs. Judgment on the findings."

Record pp. 74–75.

*Issues*

The parties present the following issues for decision:

One: Whether a municipal corporation and/or its municipal works board are liable in negligence or nuisance for the discretionary performance of a purely public duty, in the absence of a private duty?

Two: Whether there exists an implied contract between the City and the Rodmans, the terms of which require the Rodmans to pay for sewage service furnished by the City and require the City to provide sewers adequate to handle the volume of sewage reasonably expected to be discharged into them, which has been breached by the City in permitting use of the sewer system to exceed its capacity?

Three: Whether the City has "taken" the Rodmans' basement as an integral part of its sewage system and is required under the Constitutions of the State of Indiana or the United States to pay just compensation for the taking of private property for public use?

DECISION

We note that the Rodmans challenge the trial court's grant of summary judgment in favor of the City. The standard of review for summary judgment is well settled. We will examine whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. Ind.Rules of Procedure, Trial Rule 56(C). A material fact is one which will facilitate resolution of any of the factual issues either for or against the party having the burden of proof. *Id.*

*Issue One: Municipal Government Tort Immunity*

The Rodmans argue that when a city operates its municipally owned sanitary sewers, it acts in a proprietary capacity as a private enterprise subject to the same liabilities, limitations, and regulations as any other public utility and that the sewers must be adequate to handle the volume of sewage reasonably expected to occur. Further, the Rodmans assert the discharge of raw sewage into their basement constitutes a private nuisance for which they are entitled to recover because this intrusion into their basement is a special injury not inflicted upon the general public. The City argues that its decision to contract for the design and installation of the combined storm water and sanitary sewers more than twenty-five (25) years ago was the performance of discretionary function and therefore immune from liability as a matter of law under I.C. 34–4–16.5–3(6). The City maintains that the duty, if any, owed to the Rodmans is no different from the duty owed his neighbors and sewer users in the nine other areas of the City which suffer infiltration problems during heavy rains. The City argues it has committed no acts which can be construed as lack of due care.

We find the City's decision to install the sewer system was the performance of discretionary function and no liability attaches under the Indiana Tort Claims Act. I.C. 34–4–16.5–3(6). Further, we find the City owed a duty of reasonable care to all

sewage drain users as a class and no special duty to the Rodmans as individuals.

■ The Rodmans' causes of action in both negligence and nuisance fall within the Indiana Tort Claims Act since each cause of action is a claim in tort against the City, a political subdivision of the state, and its municipal works board. The Act provides:

"A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from: ... (6) the performance of a discretionary function ..."

I.C. 34–4–16.5–3(6). In deciding whether a governmental entity is immune from liability for a loss resulting from an action of the entity or its employees, the threshold question is whether the function of the governmental entity involved is ministerial or discretionary. *State Department of Mental Health v. Allen* (1981), Ind.App., 427 N.E.2d 2, *reh'g denied*, 432 N.E.2d 435. The duty of a government entity or its employees is "discretionary" under our Tort Claims Act when it devolves upon the part of an officer to determine whether or not he should perform a certain act, and, if so, in what particular manner. *Maroon v. State Department of Mental Health* (1980), Ind.App., 411 N.E.2d 404. Discretion, when applied to government entities and employees, means the option to act or not as they deem proper or necessary. Performance of a discretionary function requires exercise in judgment and choice and involves what is proper and just under the

circumstances. Discretionary acts, under the common law, generally cannot be overturned without a showing of abuse of discretion by an act or failure to act that no conscientious person acting reasonably could perform or refuse to perform. In Indiana, however, our legislature has provided complete immunity to governmental entities and employees for the performance of discretionary functions. I.C. 34–4–16.5–3(6).

Examples of governmental discretionary acts protected by the Indiana Tort Claims Act include the decision to establish and equip a park;[1] the decision to release a state mental hospital patient on a weekend pass;[2] the decision to suspend employees from their jobs pending investigation of theft charges;[3] the decision to place a minor ward in custody of a married couple;[4] the investigation of crime;[5] the decision to enforce the law in a particular manner;[6] failure to make adequate inspection of strip mining pit;[7] and, the decision to enforce building code regulations.[8]

We find that the City's decision, prior to 1960, to utilize existing combined sewers in the overall system was the performance of a discretionary function under the Tort Claims Act and the case in existence before 1974.[9] The record reveals no direct or indirect acts of misfeasance or nonfeasance on the part of the City. On the contrary, the Rodmans' complaints were investigated, and when an infiltration crack was found in the system, it was promptly repaired.

1. *Mills v. American Playground Device Co.* (1980), Ind.App., 405 N.E.2d 621, *reh'g denied*, 427 N.E.2d 1130.

2. *State Department of Mental Health v. Allen, supra.*

3. *Hedges v. Rawley* (1981), Ind.App., 419 N.E.2d 224.

4. *Snyder v. Mouser* (1971), 149 Ind.App. 334, 272 N.E.2d 627.

5. *Crouch v. Hall* (1980), Ind.App., 406 N.E.2d 303.

6. *Seymour National Bank v. State* (1979), 179 Ind.App. 295, 384 N.E.2d 1177. *See also Sports,*

*Inc. v. Gilbert* (1982), Ind.App., 431 N.E.2d 534; *Livingston v. Consolidated City of Indianapolis* (1979), Ind.App., 398 N.E.2d 1302.

7. *State Department of Natural Resources v. Morgan* (1982), Ind.App., 432 N.E.2d 59.

8. *City of Gary Department of Redevelopment v. Ruberto* (1976), 171 Ind.App. 1, 354 N.E.2d 786.

9. "A duty is discretionary when it involves on the part of the officer to determine whether or not he should perform a certain act, and if so in what particular way...." *Adams v. Schneider* (1919), 71 Ind.App. 249, 255, 124 N.E. 718, 720.

■ In addition, we find the City owed a duty of reasonable care in maintaining the sewage system to all sewage drain users as a class and no special or private duty to the Rodmans as individuals. The Rodmans' neighbors had similar problems during periods of heavy rains. Nine (9) other areas of the City also utilized the older, combined storm water and sanitary sewers resulting in occasional back ups. The duty owed to the Rodmans is no different than the duty owed their neighbors and the sewage drain users in the nine (9) other areas of the city which suffer effluent back ups during heavy rains. The Rodmans failed to show the municipality was negligent or maintained a nuisance and that the Rodmans suffered a particularized injury different in kind than suffered by the general public. Any inconvenience or incidental damage which arises from the reasonable continued use of the combined sewer system is regarded as within the rule of *damnum absque injuria*. *Howard v. Robinette* (1951), 122 Ind.App. 66, 72, 99 N.E.2d 110, 112, *transfer denied*, 230 Ind. 199, 102 N.E.2d 630.[10]

### Issue Two: Implied Contract

The Rodmans claim the sewage service furnished by the City is sufficient benefit to give rise to a legally created promise on the part of the Rodmans to pay the City for the value of the service, relying on *Reeves Estate v. Moore* (1892), 4 Ind.App. 492, 31 N.E. 44 and *Chamness v. Cox* (1891), 2 Ind.App. 485, 28 N.E. 777. Further, the Rodmans argue that since the furnishing of sewage services gives rise to an implied obligation on the part of the Rodmans to pay the City, payment gives rise to an implied obligation on the part of the City to provide the services. Finally, the Rodmans assert that the City has breached its implied promise to provide sewage service by failing to remove the sewage from their

basement and by using their basement as a temporary holding facility during periods of heavy rain.

The City denies the existence of an implied contract, and notes no written contract exists and discovery has failed to produce evidence of an oral contract. The City argues the only evidence to suggest an implied contract is the Rodmans' testimony that the sewer system should remove sewage and storm water from their property and not bring it back to their property.

■ We find that even if an implied contract existed between the parties, there is no evidence of its terms and conditions within the record, making the enforcement impossible by the trial court. Where the terms of a contract are clear, the court merely applies its provisions. *Scott v. Anderson Newspapers, Inc.* (1985), Ind.App., 477 N.E.2d 553. Parties to a contract have the right to define their mutual rights and obligations, and it is not within the province of the court to make a new contract. *Jennings Realty Corp. v. First National Bank* (1985), Ind.App., 485 N.E.2d 149. The court may not create a contract for the litigants, nor supply omitted terms while professing to construe the contract. *Ewing v. Board of Trustees of Pulaski Memorial Hospital* (1985), Ind.App., 486 N.E.2d 1094. Consequently, no factual controversy exists, although the parties have a good faith dispute as to the inferences to be drawn from the facts before the court. The trial court correctly applied the law to the facts and concluded no genuine issue of material fact existed.

### Issue Three: Eminent Domain

■ The Rodmans argue that the City knowingly and intentionally used their basement as a reservoir to hold raw sewage and storm water until the sewage system could handle it, and this temporary use

10. In *Howard,* the town of South Whitley owned and operated a municipal light and water plant for the purpose of supplying electric energy and water to the community. The original steam plant was converted to diesel before Robinette purchased his home nearby. When the diesel plant operated, it caused "rhythmic noises" audible in Robinette's home, and vibration from the plant caused the house to shake and the walls to crack. The court found Robinette had failed to prove the governing body negligent.

of the land constitutes the state's exercise of its power of eminent domain, acquiring an easement over the property, which must be justly compensated under the Indiana State Constitution, Article 1, § 21 [11] and the Fifth Amendment of the United States Constitution.[12] A consulting engineering firm presented evidence at trial that the City is using the Rodmans' basement as a temporary holding facility during periods of heavy rain; that when the City needs a temporary holding facility, it uses the Rodmans' and others' basements. Thus, the Rodmans assert the City has deprived them of the use of their property and required distasteful clean up after the property has been used, and that they are required to be compensated for this interference.

The City denies there is a taking of the Rodman property for public use as the property owner can prevent the back up of effluent by installing a antibackflow valve or a gate valve. We find the Rodmans have waived any damages arising from a possible taking on their state claim by purchasing their home with actual knowledge of the previous sewage back ups. In addition, we find the short-term interference with the use of the Rodmans' basement does not rise to the level of a taking on the federal claim.[13]

## A. The State Claim

A taking in an eminent domain proceeding has been defined as taking any actual physical part of the real estate, as well as any important rights attached thereto. *State v. Jordan* (1966), 247 Ind. 361, 215 N.E.2d 32. "[T]here is a taking when the act involves an actual interference with, or disturbance of property rights, which are not merely consequential, or incidental injuries to property or property rights, as dis-

tinguished from prohibition of use, or enjoyment, or destruction of interests in property." *School Town of Andrews v. Heiney* (1912), 178 Ind. 1, 7, 98 N.E. 628, 630.

Even if the Rodmans' basement has been "taken" within the meaning of the constitutional provisions, where a long period of time has elapsed since the appropriation of the property, it may be inferred that damages were waived. *Blair v. Kiger* (1887), 111 Ind. 193, 12 N.E. 293. The record indicates that the Rodmans saw the marks and stains from previous back ups on the walls of the basement before purchasing their home in 1979, and were aware at purchase of the existing sewer system problems. We find the Rodmans waived all claims to compensation for the taking of their property by proceeding with purchase of the home with actual knowledge of the previous sewage system back ups. As a result, the trial court correctly concluded no genuine issue of material fact existed on the State constitutional claim and granted summary judgment to the City.

## B. The Federal Claim

The Fifth and Fourteenth Amendments of the United States Constitution require that a person receive just compensation for private property that has been "taken" by the federal or state government for public use. The federal constitutional guarantee of just compensation is not a limitation on the government power of eminent domain, but rather it is a condition of its exercise. *Long Island Water Supply Co. v. Brooklyn* (1897), 166 U.S. 685, 689, 17 S.Ct. 718, 719, 41 L.Ed. 1165.

The central issue in the Rodmans' federal claim is whether the City's interference amounts to a "taking." Originally, the concept of taking may have con-

---

**11.** Ind. Const. art. I, § 21 provides:

"No person's particular services shall be demanded, without just compensation. No person's property shall be taken by law, without just compensation; nor, except in case of the State, without such compensation first assessed and tendered."

**12.** U.S. Const. amend. V provides:

" ... nor shall private property be taken for public use, without just compensation."

**13.** After careful research, we have been unable to locate any federal case in which waiver of a taking claim has been found. While we believe waiver is also appropriate to the federal claim, we choose instead to discuss the merits of the Rodmans' federal claim.

templated only actual appropriation [14] but it is clear today that non-acquisitive governmental action may amount to a taking in the constitutional sense.[15] A taking may be found when governmental activity results in significant physical damage to property that impairs its use.[16] The distinction between regulation and taking is one of degree. The state possesses the power to regulate property without payment of compensation, but if the regulation goes too far in impairing the use of property, a taking will be found.

Six times from the spring of 1980 through the spring of 1983, city sewers have backed up into the Rodmans' basement. The record does not indicate how long the sewage remained in the basement after each episode or how long the use of the Rodmans' basement was seriously interfered with. We find that short term interference, presumably for a few days, six times over the course of a three year period does not rise to the level of a taking.

There has been no permanent physical occupation of a definable part of the Rodmans' property,[17] nor has there been a transfer of a definable part of their property.[18] Nor has the City removed the Rodmans' right to exclude others from their property.[19] We find the trial court correctly concluded no genuine issue of material fact existed on the Rodmans' federal constitutional claim and appropriately granted summary judgment to the City.

Judgment of the trial court is affirmed.

CONOVER, P.J., concurs.

YOUNG, J., dissents without opinion.

**14.** *Mugler v. Kansas* (1887), 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205.

**15.** *Pennsylvania Coal Co. v. Mahon* (1922), 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322; *United States v. Causby* (1946), 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206.

**16.** *Pumpelly v. Green Bay Co.* (1871), 80 U.S. (13 Wall.) 166, 179–80, 20 L.Ed. 557.

**17.** *Loretto v. Teleprompter Manhattan CATV Corp* (1982), 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (city ordinance requiring landlord to allow installation of a cable television receiver on apartment building and denying landlord the ability to demand payment in excess of $1.00 constituted a compensable taking because the ordinance allowed for "permanent physical occupation" of a small part of the building).

**18.** *Kaiser Aetna v. United States* (1979), 444 U.S. 164, 100 S.Ct. 383, 62 L.Ed.2d 332 (application of federal navigational servitude to a lagoon, historically considered private property, constituted a taking for which just compensation was required because the lagoon was a navigable waterway in which the public was allowed free access after the lagoon was connected to a bay).

**19.** *Id. See also Pruneyard Shopping Center v. Robins* (1980), 447 U.S. 74, 83–85, 100 S.Ct. 2035, 64 L.Ed.2d 741 (distinguishing *Kaiser Aetna* on the basis that the taking of the right of exclusivity from privately held property in *Kaiser* went too far in interfering with "reasonable investment backed expectations," whereas the shopping center regulation was a reasonable regulation of commercial functions).