## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 15 2016, 9:34 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

William O. Harrington
Harrington Law, P.C.
Danville, Indiana

ATTORNEYS FOR APPELLEE

Daniel M. Witte
Aimee Rivera Cole
Travelers Staff Counsel Office
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brian L. Boyland; Jennifer K. Boyland; Anthony S. Climer; Lisa J. Climer; Sydney A. Climer; Anthony S. Climer and Lisa J. Climer, as parents and next friends of Lydia J. Climer,

*Appellants-Plaintiffs,*

v.

Kenneth Hedge, in his capacity as Boone County Surveyor; Boone County Drainage Board; Boone County Board of Commissioners; JPMorgan Chase Bank, N.A.; Specialized Loan Servicing, L.L.C.; and PNC Bank,

*Appellees-Defendants*

July 15, 2016

Court of Appeals Case No. 06A05-1509-CT-1383

Appeal from the Boone Superior Court

The Honorable Matthew C. Kincaid, Judge

Trial Court Cause No. 06D01-1110-CT-493

**Bailey, Judge.**

# Case Summary

Brian and Jennifer Boyland ("the Boylands") and Anthony, Lisa, Sydney, and Lydia Climer ("the Climers") (collectively, "Homeowners") brought negligence and inverse condemnation claims against Kenneth Hedge ("Hedge"), in his capacity as Boone County Surveyor, the Boone County Drainage Board, and the Boone County Board of Commissioners (collectively, "the Boone County defendants").[1]  In answering the negligence claims, the Boone County defendants raised a defense of discretionary function immunity.  Homeowners sought, and were denied, partial summary judgment on this defense.  After a bench trial regarding the applicability of the defense, judgment was entered for the Boone County defendants on the negligence claims.  Summary judgment was subsequently granted to the Boone County defendants on the inverse condemnation claims.  Homeowners challenge the denial of their motion for partial summary judgment on the immunity defense and also challenge the grant of summary judgment on the inverse condemnation claims.  We affirm.

---

[1] JP Morgan Chase Bank, N.A., Specialized Loan Servicing, LLC, and PNC Bank were named as additional defendants to answer for their respective interests in inverse condemnation proceedings.  These parties were not active parties in the litigation and are not active parties on appeal.

# Issues

Homeowners present two issues for review:

>    I.   Whether they were entitled to partial summary judgment on the statutory affirmative defense of discretionary function immunity, precluding the bench trial; and

>    II.   Whether the trial court improvidently granted summary judgment to the defendants on the inverse condemnation claims.

# Facts and Procedural History

Homeowners own two parcels of residential property located on West County Road 300 South in Boone County, Indiana. County Road 300 is at a higher elevation than the residences, which appear to "sit in a bowl." (Tr. at 666.) The residential properties are beside Dickey Ditch, a tributary to Big Raccoon Creek.[2] The water flows east to west adjacent to the south property line of the Climer property; it flows east to west adjacent to the south property line of the Boyland property and then turns to flow south to north adjacent to the west property line of the Boyland property.

Several times since 2002, the Climers and Boylands have experienced residential flooding that occurred after periods of unusually heavy rain. In

---

[2] Dickey Ditch existed before the residences were constructed.

2005, the Boylands filed a lawsuit against the Boone County defendants. The lawsuit was dismissed.

[5] After dismissal of the first lawsuit, Hedge was notified of a subsequent flooding event and persuaded the Boone County Drainage Board to obtain an engineering study with respect to Dickey Ditch. The firm of Christopher B. Burke Engineering, Ltd. performed a hydrologic and hydraulic analysis of Dickey Ditch near the Homeowners' properties and compiled a report ("the Burke Report"). "Potential Measures" were identified in the Burke Report. The potential measures identified included the following: replace existing culverts; eliminate a 15 inch diameter culvert pipe; increase the ditch size; remove sediment related to beaver dams; acquire the Homeowners' properties; and lower an area that effectively functioned as a levee because the elevation at the south was higher than the elevation at the north.

[6] At a 2008 presentation before the Boone County Drainage Board (which included three members who were also Boone County Commissioners), a representative of the Burke engineering firm explained that replacement of existing culverts could cost more than $870,000.00 and flooding risk would be lessened but not eliminated. Also, he explained that reconstruction extensive enough to result in a large bridge classification would require, by federal regulation, an inspection every two years. There ensued some discussion clarifying that "a million bucks" could be spent without a "cure," and that the Board of Commissioners would be tasked with making a final decision because road crossings were involved. (App. at 324.) No vote was taken and no

"potential measure" was specifically adopted. In the ensuing years, none of the "potential measures" were implemented, other than tile repair, brush removal, and destruction of beaver dams (with some related sediment removal).

[7] Flooding again occurred in 2011. On March 30, 2011, Homeowners served tort claims notices on the Boone County defendants. Their first complaint was filed on October 20, 2011. As later amended, after a flooding event in 2013, the complaint sought injunctive relief and also asserted negligence, trespass, and inverse condemnation claims. The Boone County defendants answered the complaint and asserted that the affirmative defense of discretionary function immunity precluded recovery on the negligence claims. Homeowners requested that partial summary judgment be entered against the Boone County defendants on the immunity defense while the Boone County defendants sought summary judgment on the negligence claims on both immunity and proximate cause grounds.

[8] On February 14, 2014, the trial court entered an order denying the cross-motions. The trial court stated that the defendants had not shown their entitlement to summary judgment because:

> there is a genuine issue of material fact whether anything Boone County did or did not do with regard to Dickey Ditch proximately caused flooding to the Climer and Boyland properties. A trial is necessary on that subject matter.

(App. at 976.) As for the immunity defense, the trial court concluded:

> Neither side, at this time, has demonstrated conclusively either that there is or is not immunity. Accordingly, Plaintiff's Motion for Partial Summary Judgment on the question of immunity also should be and now is DENIED.

(App. at 976.)

[9] On September 9, 2014, the trial court entered an order approving an "Agreed Motion for Case Management and Separate Trials." (App. at 1016.) It was determined that two sets of claims would go forward – negligence and inverse condemnation – and would proceed on separate "tracks." (App. at 1017.) First, the trial court was to conduct a bench trial "limited to the issue of whether the defense of discretionary function immunity is available to Defendants as a complete defense with respect to the negligence claims." (App. at 1018.) A jury trial on the negligence claims was tentatively scheduled. The inverse condemnation claims were set for a subsequent jury trial date.

[10] On December 18, 2014, with the Homeowners' objection having been made, the trial court conducted a bench trial on the issue of availability of the discretionary function immunity defense. On February 24, 2015, the trial court entered judgment in favor of the Boone County defendants, concluding that they were entitled to immunity.

[11] On April 28, 2015, the Boone County defendants filed a motion for summary judgment with respect to the inverse condemnation claims. Homeowners filed a cross-motion for summary judgment. On August 19, 2015, the trial court

entered an order granting summary judgment to the Boone County defendants on the remaining counts against them. This appeal ensued.

# Discussion and Decision

## Discretionary Function Immunity

### Standard of Review

Our review of the grant or denial of a summary judgment motion is the same as it is for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Kroger Co. v. Plonski*, 930 N.E.2d 1, 4-5 (Ind. 2010). In conducting our review of the evidence sanctioned by Indiana Trial Rule 56(C), we construe all factual inferences in favor of the non-moving party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Id.* at 5.

A genuine issue of material fact exists when the facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on the issue. *Indiana Dep't of Transp. v. Sadler*, 33 N.E.3d 1187, 1190 (Ind. Ct. App. 2015). Where the evidence is in conflict, or undisputed facts lead to conflicting inferences, a grant of summary judgment is inappropriate, even if it appears that the nonmovant will not succeed at trial. *Id.*

Our standard of review is not altered by the fact that the parties made cross-motions for summary judgment. *Indiana Farmers Mut. Ins. Grp. v. Blaskie*, 727

N.E.2d 13, 15 (Ind. Ct. App. 2000). Instead, we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Alva Elec., Inc. v. Evansville-Vanderburgh Sch. Corp.*, 7 N.E.3d 263, 267 (Ind. 2014).

# Analysis

[15] The Boone County defendants raised an affirmative defense described in Indiana Code Section 34-13-3-3(7):

> A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following: (7) The performance of a discretionary function[.]

[16] The Indiana Tort Claims Act ("the ITCA") provides that governmental entities may be liable for torts committed by its agencies and its employees, but protects governments from liability in certain circumstances. *Peavler v. Monroe Cnty. Bd. of Comm'rs*, 528 N.E.2d 40, 42 (Ind. 1988). The policy underlying governmental immunity is the idea that certain kinds of executive branch decisions should not be subject to judicial review. *Id.* at 44. The separation of powers doctrine forecloses the courts from reviewing political, social, and economic actions within the province of coordinate branches of government. *Id.*

[17] In *Peavler*, our Indiana Supreme Court adopted the planning/operational test for determining whether an act is a discretionary function:

> [u]nder the planning/operational dichotomy, the type of discretion which may be immunized from tort liability is generally that attributable to the essence of governing. Planning

activities include acts or omissions in the exercise of a legislative, judicial, executive or planning function which involves formulation of basic policy decisions characterized by official judgment or discretion in weighing alternatives and choosing public policy. Government decisions about policy formation which involve assessment of competing priorities and a weighing of budgetary considerations or the allocation of scarce resources are also planning activities.

528 N.E.2d at 45 (internal citations omitted). "The critical inquiry is not merely whether judgment was exercised but whether the nature of the judgment called for policy considerations." *Id.* Operational functions are characterized by the execution or implementation of previously formulated policy. *City of Valparaiso v. Defler*, 694 N.E.2d 1177, 1182 (Ind. Ct. App. 1998), *trans. denied*.

[18] Here, Homeowners do not argue that the trial court ultimately misapplied the *Peavler* test when making the determination of immunity at the conclusion of the bench trial. Rather, Homeowners focus upon their claimed entitlement to a partial summary judgment order precluding the Boone County defendants from further efforts to establish the defense.

[19] In denying partial summary judgment, the trial court stated that factual development was needed for appropriate application of the planning/operational test.[3] Homeowners acknowledge that there were factual

---

[3] The *Peavler* Court acknowledged that factual development may be necessary: "The issue of whether an act is discretionary and therefore immune is a question of law for the court's determination. The question may require an extended factual development." 528 N.E.2d at 46.

disputes at that time.  Although Homeowners took the position that reconstructive efforts should have been undertaken, it was also disputed whether inadequate maintenance played a role in flooding.  At a minimum, the trial court yet needed to identify the extent of the particular actions or inactions by the Boone County defendants that were at issue.[4]  The trial court would then evaluate the conduct by application of factors, as outlined in *Peavler*, which, under most circumstances, point toward immunity:

> The nature of the conduct:  whether the conduct has a regulatory objective; whether the conduct involved the balancing of factors without reliance on a readily ascertainable rule or standard; whether the conduct requires a judgment based on policy decisions; whether the decision involved adopting general principles or only applying them; whether the conduct involved establishment of plans, specifications and schedule; and whether the decision involved assessing priorities, weighing of budgetary considerations or allocation of resources.
>
> The effect on governmental operations:  whether the decision affects the feasibility or practicability of a government program; and whether liability will affect the effective administration of the function in question.

---

[4] According to Homeowners, Dickey Ditch is a regulated drain in need of reconstruction, but also the defendants failed to adequately maintain the ditch.  The designated materials placed a major focus upon the lack of implementation of measures identified in the Burke Report.  However, there were references to affirmative conduct, such as alleged creation of a swale and placement of culvert pipe that was allegedly inadequate.  In some cases, it may be understood that Homeowners claimed actions were taken, such as sediment removal, but to an inadequate extent.

> The capacity of the court to evaluate the propriety of the government's action – Whether tort standards offer an insufficient evaluation of the plaintiff's claim.

*Peavler*, 528 N.E.2d at 46. The government is exposed to liability when no policy-oriented decision-making process has been undertaken. *Id.* at 47.

[20] According to Homeowners, the trial court need not have conducted a bench trial to implement this framework. Homeowners argue: "since the trial court found that issues of fact existed regarding whether Discretionary Function Immunity should apply, the trial court should have concluded that the Discretionary Function Immunity Defense is not available to the Boone County Defendants." Appellants' Br. at 31. As best we can discern Homeowners' argument, they contend that summary judgment in their favor was mandatory in light of factual disputes and the strict construction given to an immunity statute enacted in derogation of the common law. This would seem to turn the summary judgment standard on its head.

[21] Homeowners direct our attention to *Farley v. Hammond Sanitary District*, 956 N.E.2d 76 (Ind. Ct. App. 2011), an appeal brought by homeowners whose basements had been flooded with sewage during a severe storm. In *Farley*, a panel of this Court concluded that summary judgment had been improvidently granted to the Hammond Sanitary District "on the plaintiffs' tort claims on grounds of immunity." *Id.* at 83. The *Farley* decision relied heavily upon our Indiana Supreme Court's guidance in *Gary Cmty. Sch. Corp. v. Roach-Walker*, 917 N.E.2d 1224, 1226 (Ind. 2009).

In *Roach-Walker*, the plaintiff had slipped and fallen at a school. She brought suit, claiming that the school's negligence in maintaining the walkway had caused her injury. At trial, the school had moved for a directed verdict, contending that the ITCA conferred immunity because the fall occurred as a result of temporary conditions caused by weather. 917 N.E.2d at 1225. The trial court concluded that the claim of immunity raised disputed factual issues and denied the motion. *Id.* The jury found for the plaintiff and the school appealed.

On appeal, the Court observed that the parties disputed only whether the fall resulted from a temporary condition caused by weather and that "the record as to weather conditions is inconclusive." 917 N.E.2d at 1225. In response to the request of the appellant-defendant that the Court adopt a rebuttable presumption that all icy conditions are temporary, "effectively shifting the burden to the plaintiffs to disprove immunity," the Court observed: "Because the ITCA is in derogation of the common law, we construe the act strictly against limiting a claimant's right to bring suit." *Id.* at 1228-29. The Court also discussed, in general, the establishment of the immunity defense:

> Whether an immunity applies is a matter of law for the courts to decide. The party seeking immunity bears the burden of establishing the immunity. If the facts allow multiple reasonable conclusions as to the element triggering the immunity, then the governmental unit has failed to establish its immunity. Of course, the government may still escape liability if it can demonstrate it owed no duty to the plaintiffs, did not breach its duty, or did not cause any damages.

*Id.* at 1226.

[24] This language in *Roach-Walker*, later cited in *Farley*, a summary judgment case, does not dictate the result desired by Homeowners. Homeowners ignore the procedural posture of *Farley*, that is, the party asserting the immunity defense had been granted summary judgment despite factual issues. There, this Court stated:

> We are required by our standard of review to construe the facts in the light most favorable to Farley and Paul. These facts allow multiple reasonable conclusions as to an element triggering governmental immunity; consequently, *HSD has failed to establish its immunity*.

*Farley*, 956 N.E.2d at 83 (emphasis added).

[25] Homeowners apparently believe that they were entitled to partial summary judgment on the immunity defense because the Boone County defendants did not show the absence of a factual dispute. We must review Homeowners' motion separately, *Alva Elec. Inc.*, 7 N.E.3d at 267. Under our summary judgment standard, Homeowners could not prevail by showing the existence of a factual dispute. Rather, Homeowners would properly be granted partial summary judgment only if they demonstrated the absence of a genuine issue of material fact and that they were entitled to partial summary judgment as a matter of law. That is, Homeowners needed to establish that the Boone County defendants were not entitled to immunity as a matter of law. T.R. 56(A). They did not do so. The trial court properly denied the motion for partial summary

judgment and proceeded with a hearing to allow the development of an extended factual basis for determining the question of immunity.

# Inverse Condemnation

[26] Article 1, section 21 of the Indiana Constitution provides that "No person's property shall be taken by law, without just compensation; nor, except in case of the State, without such compensation first assessed and tendered." The Fifth Amendment to the U.S. Constitution similarly provides that "nor shall private property be taken for public use, without just compensation." The Fifth Amendment's Takings Clause applies to the states through the Due Process Clause of the Fourteenth Amendment. *State v. Kimco of Evansville, Inc.*, 902 N.E.2d 206, 210 (Ind. 2009). The state and federal takings clauses are textually indistinguishable and are to be analyzed identically. *Id.* An exercise of eminent domain is clearly a taking; however, other forms of governmental action are "takings" only if they meet the prevailing federal standard. *Id.* at 210-11. That standard is: governmental action effects a taking if it deprives an owner of all or substantially all economic use of his or her property. *Id.* at 211. However, legislatures may confer greater rights to compensation for government action than those afforded by the constitutional takings clauses. *Id.* at 212.

[27] Indiana Code Section 32-24-1-16 provides:

> A person having an interest in property that has been or may be acquired for a public use without the procedures of this [Eminent Domain] article or any prior law followed is entitled to have the

person's damages assessed under this article substantially in the manner provided in this article.

[28] Homeowners' amended complaint alleged that, "by breaching their duties," the Boone County defendants had "acquired the [Boyland and Climer] Real Estate for a public use – namely, as an extension of the Dickey Ditch, without following the procedures for acquiring real estate by eminent domain under Indiana law."[5] (App. at 70.) They now contend that the trial court improperly granted summary judgment to the defendants on the inverse condemnation claims.

[29] With respect to inverse condemnation claims, our Supreme Court has stated the following:

> The state has inherent authority to take private property for public use. *Kelo v. City of New London*, 545 U.S. 469, 477, 125 S. Ct. 2655, 162 L. Ed. 2d 439 (2005). The Indiana Constitution and the Fifth Amendment require just compensation if this authority is exercised. *Schnull v. Indianapolis Union Ry. Co.*, 190 Ind. 572, 575, 131 N.E. 51, 52 (1921). Indiana Code Chapter 32-24-1 (2004) outlines the process by which the state is to initiate eminent domain proceedings. If the government takes property but fails to initiate proceedings, Section 32-24-1-16 explicitly allows an owner of property acquired for public use to bring a suit for inverse condemnation to recover money damages:

---

[5] The Homeowners now contend that, in 2002, prior to their Tort Claims Notice filed in this case, the Boone County defendants accomplished a "taking" by "diverting additional drainage into the Dickey Ditch upstream of Plaintiffs' property via the Large Drainage Swale." Appellants' Br. at 37. They describe their properties "as a retention pond." Appellants' Br. at 38.

> A person having an interest in property that has been or may be acquired for a public use without the procedures of this article or any prior law followed is entitled to have the person's damages assessed under this article substantially in the manner provided in this article.
>
> An action for inverse condemnation requires: "(1) a taking or damaging; (2) of private property; (3) for public use; (4) without just compensation being paid; and (5) by a governmental entity that has not instituted formal proceedings." 29A C.J.S. *Eminent Domain* § 560 (2007).

*Murray v. City of Lawrenceburg*, 925 N.E.2d 728, 731 (Ind. 2010).

[30]  An inverse condemnation action has two stages: (1) the landowner must show that he has an interest in land which has been taken for public use without having been appropriated under eminent domain laws; and (2) if the court finds that a taking has occurred, then the court appoints appraisers and damages are assessed. *Mendenhall v. City of Indianapolis*, 717 N.E.2d 1218, 1227 (Ind. Ct. App. 1999), *trans. denied*. A taking by inverse condemnation includes any substantial interference with private property that destroys or impairs one's free use, enjoyment, or interest in the property. *Id.* Ordinarily, the question of whether a particular interference is substantial is a question of fact for the factfinder. *Id.* An action for inverse condemnation is premature until such time as the landowner can establish that his property has been deprived of all economically beneficial or productive use. *Id.* at 1227-28.

[31]  If there is no public use, neither eminent domain nor inverse condemnation would apply. *Murray* at 733. Whether a particular use is a public use is a

question of law. *Id.* (citing 11A Ind. L. Enc. *Eminent Domain* § 10, at 254 (2007)).

[32]   In *Beck v. City of Evansville*, 842 N.E.2d 856 (Ind. Ct. App. 2006), homeowners sought damages on a claim of inverse condemnation after the City of Evansville suffered two major storm events, one in 2003, and one in 2004. Surface water and sewage flowed on the property and into the homeowners' homes. The homeowners appealed challenging the trial court's grant of summary judgment. In affirming the trial court's decision, this Court stated:

> [T]here has been no taking of any actual physical part of the homeowners' real estate, nor have any important rights attached to the real estate been taken. There has been no permanent physical occupation of any definable part of the homeowners' property, and there has been no transfer of a definable part of the homeowners' properties. To the contrary, the homeowners or tenants have continued to live in their homes. In essence, the homeowners' free use, enjoyment, and interest in their properties have not been impaired. Thus, we conclude that there has been no taking of the homeowners' property as a matter of law under either the United States or Indiana Constitutions.

842 N.E.2d at 864.

[33]   Similarly, in *Rodman v. Wabash*, 497 N.E.2d 234 (Ind. Ct. App. 1986), we held that sewer backup into a homeowner's basement six times over the course of a three-year period did not constitute a taking. In affirming the trial court's grant of summary judgment in favor of the city, we stated:

A taking may be found when governmental activity results in significant physical damage to property that impairs its use. The distinction between regulation and taking is one of degree. The state possesses the power to regulate property without payment of compensation, but if the regulation goes too far in impairing the use of property, a taking will be found.

Six times from the spring of 1980 through the spring of 1983, city sewers have backed up into the Rodmans' basement. The record does not indicate how long the sewage remained in the basement after each episode or how long the use of the Rodmans' basement was seriously interfered with. We find that short term interference, presumably for a few days, six times over the course of a three year period does not rise to the level of a taking.

There has been no permanent physical occupation of a definable part of the Rodmans' property, nor has there been a transfer of a definable part of their property. Nor has the City removed the Rodmans' right to exclude others from their property. We find the trial court correctly concluded no genuine issue of material fact existed on the Rodmans' federal constitutional claim [of just compensation for a taking].

497 N.E.2d at 242.

[34] Homeowners rely upon *Arkansas Game & Fish Comm'n v. United States,* 133 S.Ct. 511 (2012), to support their argument that damages resulting from temporary flooding can amount to a compensable taking. *Arkansas Game* involved periodic flooding of forest land by the U.S. Army Corps of Engineers. From 1993 until 2000, the repeated flooding damaged or destroyed more than 18 million board feet of timber and disrupted the ordinary use and enjoyment of the Arkansas Game and Fish Commission's property. The Court ruled that "government-

induced flooding temporary in duration gains no automatic exemption from Takings Clause inspection." 133 S.Ct. at 522. Also relevant to the takings inquiry is the degree to which the invasion is intended or is the foreseeable result of authorized government action. *Id.* So too are the character of the land and the owner's reasonable investment-backed expectations regarding the land use. *Id.*

[35] Here, there is no intentional invasion of Homeowners' property, as was the case in *Arkansas Game*. The designated evidence, including Board minutes, demonstrates that the Boone County defendants paid approximately $14,000.00 to an engineering firm in the hopes of preventing the invasion of waters onto Homeowners' properties. The Boone County defendants did not garner a benefit and Homeowners' property was not subjected to public "use." Rather, the designated evidence discloses circumstances akin to those present in *Beck* and *Rodman*, that is, an unintended and short-term interference as opposed to a permanent physical occupation. The summary judgment materials would support but one conclusion: the temporary occupation of Homeowners' property by surface water that had increased in volume during extraordinary rainfall did not amount to a taking by the Boone County defendants for public use.

# Conclusion

[36]     The trial court properly denied Homeowners' motion for partial summary judgment prior to the bench trial. The trial court properly granted summary judgment to the defendants on the inverse condemnation claims.

[37]     Affirmed.


Bradford, J., and Altice, J., concur.