

FILED
Oct 29 2013, 5:37 am

CLERK
of the supreme court,
court of appeals and
tax court

**FOR PUBLICATION**

ATTORNEYS FOR APPELLANT:

**BRIAN W. WELCH**
**KARL L. MULVANEY**
**RAFAEL A. SANCHEZ**
Bingham, Greenbaum, Doll, LLP.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
BETA STEEL CORPORATION AND
TOP GUN INVESTMENT CORP., II:

**BRIAN E. CASEY**
**D. MICHAEL ANDERSON**
Barnes & Thornburg, LLP.
South Bend, Indiana

**ABIGAIL A. CLAPP**
Greenberg, Traurig, LLP.
Chicago, Illinois

**JEFFERY R. MANN**
Greenberg, Traurig, LLP.
New York, New York

ATTORNEYS FOR APPELLEES
THEODORE P. ANGELOPOULOS
NEPTUNIA INCORPORATED,
TRANSMAR CORPORATION, AND
DIDIAC ESTABLISHMENT

**JON LARAMORE**
**DAVID K. HERZOG**
**ANNE K. RICCHIUTO**
Faegre, Baker, Daniels, LLP.
Indianapolis, Indiana

**LARRY G. EVANS**
Hoeppner, Wagner & Evans, LLP.
Merrillville, Indiana

| | |
|---|---|
| CONSTANTINOS P. ANGELOPOULOS, | ) |
| | ) |
| Appellant-Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| THEODORE P. ANGELOPOULOS, | ) |
| NEPTUNIA INCORPORATED, | )    64A04-1211-PL-594 |
| TRANSMAR CORPORATION, | ) |
| DIDIAC ESTABLISHMENT, | ) |
| BETA STEEL CORPORATION, and | ) |
| TOP GUN INVESTMENT CORPORATION, II. | ) |
| | ) |
| Appellees-Defendants. | ) |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable Mary R. Harper, Judge
Cause No. 64D05-0811-PL-10838

**October 29, 2013**

**OPINION – FOR PUBLICATION**

**MATHIAS, Judge**

Constantinos P. Angelopoulos ("Constantinos") appeals the orders of the Porter

Superior Court dismissing his claims against Theodore P. Angelopoulos ("Theodore"),

Neptunia Inc. ("Neptunia"), Transmar Corp. ("Transmar"), Didiac Establishment

("Didiac"), Beta Steel Corp. ("Beta Steel"), and Top Gun Investments Corp. II ("Top

Gun"). All of Constantinos's claims are based on his allegation that he is entitled to a

portion of the shares of Beta Steel as an heir under his late father's estate, which was

administered in Greece. The trial court concluded that this issue had been decided against Constantinos in prior litigation in the Greek court system and dismissed Constantinos's claims. Constantinos appeals and presents several issues, which we restate as:

I. Whether the trial court erred in concluding that Constantinos's claims were precluded by previously-entered judgments in the courts of Greece, and

II. Whether the trial court erred by concluding that certain materials obtained by Constantinos during discovery and filed in court should remain confidential.

Concluding that the prior rulings of the Greek courts have conclusively established that Theodore is the sole owner of Beta Steel, we affirm the trial court's order dismissing Constantinos's claims. We also conclude, however, that the trial court erred in declaring that the materials filed in court should automatically remain confidential, and we accordingly reverse the trial court's order on this issue and remand for further proceedings on the issue of confidentiality and public access.

**Facts and Procedural History**

Both Constantinos and Theodore are the sons of Panayiotis Angelopoulos,[1] and both are Greek citizens who live in Greece. Panayiotis and his brothers, John and Demetrios, were Greek citizens who founded several companies that owned the assets of the brothers' combined business activities. John Angelopoulos died in 1974, and Demetrios Angelopoulos was murdered in 1986, leaving Panayiotis as the sole owner of

---

[1] The parties refer to Constantinos as "CPA" and to Theodore as "TPA." They refer to their father as "P.A.", whose Greek name is Παναγιώτης, which is transliterated in the record as both "Panagiotis" and "Panayiotis."

3

the family's business assets. Panayiotis died intestate in 2001, leaving a substantial estate. Pursuant to Greek intestacy laws, Panayiotis's widow was entitled to two-eighths of the estate, and his two sons, Constantinos and Theodore, were each entitled to three-eighths of the estate.

At issue in the present case is the company Beta Steel, which Panayiotis founded in 1989. Beta Steel's main facility is in Portage, Indiana. Beta Steel was owned by three companies: Neptunia, a Liberian corporation; Transmar, also a Liberian corporation; and Didiac, a Liechtenstein-based foundation. The parties refer to these three companies as "the Offshore Entities." Simply put, Constantinos claims that these companies, including Beta Steel, were part of his father's estate. Theodore claims that his father transferred ownership of Beta Steel to him by way of an *inter vivos* gift.

In 1999, prior to Panayiotis's death, Constantinos filed suit in Greece claiming that he, Theodore, and his father were in a "community of interests" and that he was entitled to one-third of the assets of this partnership, which included the Offshore Entities and therefore, Beta Steel. This suit was settled by the parties and Constantinos agreed to waive his claims against Theodore. However, Constantinos again filed suit seeking to claim one-third interest in his father's companies. While this case was pending, Panayiotis died. After his father's death, Constantinos again settled his claim and waived his right to future claims in exchange for considerable consideration.

Undeterred by his two settlements and their accompanying waivers, Constantinos filed three new suits in Greece, claiming that his earlier waivers were invalid. In these cases, Constantinos claimed that he had a one-third ownership interest in Beta Steel under

4

the same theory he had pleaded earlier, and also that he had a three-eights interest under Greek intestacy laws. Constantinos's claims were tried to the Athens Multi-member Court of First Instance. On March 20, 2006, the Athens Court found in favor of Theodore, dismissed Constantinos's claims, and ordered Constantinos to pay damages to Theodore and his wife for defamation. Constantinos appealed this judgment to the Greek Court of Appeals, which affirmed the dismissal and damages award on June 14, 2007. Constantinos then appealed to the Greek Supreme Court, which also affirmed the dismissal on July 8, 2008. Specifically, the Greek Supreme Court affirmed the Court of Appeals' rejection of both Constantinos's claim regarding the partnership and his claim based on inheritance under Greek intestacy law.

Constantinos then brought a criminal action against Theodore, claiming that Theodore had "grabbed" certain assets, including Beta Steel. Appellant's App. p. 1405. Constantinos also brought a civil action against Theodore in conjunction with this criminal case. The Greek prosecutors, however, declined to pursue the criminal case, which was terminated by the Athens First Instance Criminal Board. Constantinos appealed this termination to the Athens Appeals Board, which issued a lengthy decision affirming the lower decision, concluding that "while Panayiotis Angelopoulos was alive, he had ceded (before 1989) to his son [Theodore] the shares of the companies "BETA STEEL" and "ALPHA STEEL." Appellant's App. p. 1405.

Meanwhile, in September 2008, Constantinos filed an inheritance action, which he now refers to as an "accounting action," in the Athens Multi-Member Court of First Instance. Here again, Constantinos claimed that Beta Steel was an asset of his father's

5

estate to which he was entitled to a three-eights share under Greek intestacy law. On April 11, 2009, the court rejected Constantinos's claims, specifically finding credible the testimony that "[Panayiotis] granted – while alive – to the claimant [Constantinos] the steel works in Switzerland (Ferrowohlen) and to the defendant [Theodore] the other two steel works plants of the group and more specifically the shares of the companies – shareholders Beta Steel Corp. (USA) and Alpha Steel Ltd. (England)." Id. at 384. The court also stated that "the lawsuit is rejected as substantially unfounded." Id. at 387.

The Greek Court of Appeals affirmed this decision on September 9, 2011. In so doing, the Greek Court of Appeals specifically noted that the lower court "deemed that the legal action was specific and legitimate (except the claim for the acknowledgement of the share of the plaintiff in the estate of his father in Greece, which claim it deemed to be unacceptable due to lack of legal interest) and rejected said action, although it deemed it to be legal, as unfounded on its merits." Id. at 1828. The Court of Appeals also wrote:

> It was further proven [at the lower court] that the father of the litigants, Panagiotis Angelopoulos, for the time that he was alive, had transferred, as gifts, most of his assets to his children (the litigants) and had assigned to them managerial duties in various enterprises of his, however, without ever establishing with them a silent company, as the plaintiff alleges, and making them his partners with the same share (1/3 each) in the enterprises and his overall property. Among other things, the plaintiff became the exclusive owner of the capital stock of the Steel Mill that is based in Zurich Switzerland, and with [the] company name "FERROWOHLEN", five (5) commercial ships and the legal entity (ESTABLISH MGMT) with the name "CASSIDRA", **and the defendant became the exclusive owner of the Steel Mill with the name "BETA" which is based in the U.S.A. and the Steel Mill "ALPHA STEEL" which is based in England.**

6

Id. at 1838-39. The court affirmed the lower court's rejection of Constantinos's claims "on their merits." Id. at 1839.[2]

In October 2008, the "Offshore Entities" (Neptunia, Transmar, and Didiac), which were owned by Theodore, sold the shares of Beta Steel to Top Gun, which is a Delaware Corporation owned by OJSC Novolipetsk Steel, a Russian corporation headquartered in Moscow. Top Gun purchased Beta Steel from the Offshore Entities for $350,000,000.

On November 3, 2008, shortly after filing the inheritance action in the Greek courts, Constantinos filed a complaint against Theodore, Beta Steel, and the Offshore Entities in Porter Superior Court, initiating the instant case

Again, Constantinos claimed that he had a three-eighths interest in Beta Steel under Greek inheritance laws; he also sought a prejudgment attachment of three-eighths of the shares of Beta Steel and sought orders from the trial court directing Beta Steel "to not transfer 3/8ths of the issued and outstanding shares of its stock on the books and records pending the further order" and requiring the defendants to deposit with the trial court clerk a check equal to the monetary value of Constantinos's alleged three-eighths interest of Beta Steel.[3] Lastly, Constantinos's complaint alleged that, in the event that the shares of Beta Steel had already been transferred, that such transfer was fraudulent and entitled him to an order of attachment.

---

[2] The Greek Supreme Court rejected Constantinos's appeal in this action, again stating that Panayiotis had made *inter vivos* transfers of Ferrowohlen to Constantinos and of Alpha Steel and Beta Steel to Theodore. Appellee's Addendum p. 7.

[3] Three eighths of $350,000,000, which was the purchase price of Beta Steel, is $131,250,000.

7

On December 1, 2008, the defendants filed a motion to dismiss. Before the trial court ruled on the motion to dismiss, Constantinos filed an amended complaint on February 17, 2010, adding Top Gun as a defendant. Theodore, the Offshore Entities, and Beta Steel moved to dismiss the amended complaint on April 13, 2010. On that same day, Top Gun also filed a motion to dismiss.

During the discovery process, the parties entered into a stipulated protective order providing that some of the documents subject to discovery would contain "trade secrets or other confidential research, development or commercial information described in Rule 26(C) of the Indiana Rules of Trial Procedure." Appellant's App. pp. 226-27. Pursuant to this agreed protective order, the parties could designate certain documents as confidential and could only be disclosed to: (1) the parties, (2) the trial court, (3) U.S. and Greek counsel for the parties, (4) experts retained by the parties, (5) employees or representatives of the parties responsible for the conduct of the case, (6) court reporters and/or stenographers, as necessary, (7) a deponent or witness, and (8) such persons as the parties might stipulate. Id. at 228. The trial court approved this agreed protective order. Constantinos subsequently deposed Theodore, and Theodore's counsel designated several portions of the deposition as confidential. On October 26, 2010, Constantinos filed a motion to initiate an Administrative Rule 9(H) proceeding in which he claimed that Theodore's deposition should be made public. The trial court held a hearing on the motion on March 23, 2011 and denied it on June 9, 2011.

The trial court then held a hearing on the defendants' motions to dismiss on April 30, 2012, and entered detailed orders granting the motions to dismiss on October 29,

8

2012. The trial court concluded that the earlier Greek court decisions should be afforded comity and that these prior decisions acted as res judicata to bar Constantinos's current claims. The trial court also concluded in the alternative that Constantinos's claims should be dismissed on the grounds of *forum non conveniens*. The trial court also dismissed Constantinos's claims against Beta Steel and Top Gun, concluding that it had no personal jurisdiction over Top Gun and that Constantinos failed to state a claim upon which relief could be granted. The trial court also concluded that its comity/res judicata analysis applied to Beta Steel and Top Gun. Constantinos now appeals.

## I. Preclusive Effect of Prior Greek Court Rulings

Constantinos first claims that the trial court erred in concluding that it should afford comity to the Greek court decisions and that these decisions act as res judicata to bar Constantinos's current claims. The decision of whether to dismiss an action out of comity is left to the discretion of the trial court. Brightpoint, Inc. v. Pedersen, 930 N.E.2d 34, 39 (Ind. Ct. App. 2010). An abuse of discretion occurs only when the trial court's judgment is against the logic and effects of the facts and circumstances before it, and we will not reweigh the evidence most favorable to that judgment. Id.

As this court explained in Brightpoint, under principles of comity, Indiana courts may respect the final decisions of sister courts as well as proceedings pending in those courts. Id. Unlike the constitutional requirement to give full faith and credit to the public acts, records, and judicial proceedings of our sister states, comity is a rule of convenience and courtesy. Id. Comity has been described as representing a willingness to grant a privilege, not as a matter of right, but out of deference and good will, and the primary

9

value of comity is to promote uniformity of decision by discouraging repeated litigation of the same question.  Id.

Generally, where an action concerning the same parties and the same subject matter has been commenced in another jurisdiction capable of granting prompt and complete justice, comity should require staying or dismissing of a subsequent action filed in a different jurisdiction.  Id. at 39-40.  Factors to be considered in addressing comity questions include: (1) whether the first filed suit has been proceeding normally, without delay, and (2) whether there is a danger the parties may be subjected to multiple or inconsistent judgments.  Id. at 40.  As explained in Brightpoint:

> [I]t is appropriate to look for guidance from cases interpreting Indiana Trial Rule 12(B)(8), which expressly permits dismissal of a lawsuit where another action already is pending in another Indiana state court.  Under that rule, a second action "should be dismissed, where the parties, subject matter, and remedies are precisely or even substantially the same in both suits."

930 N.E.2d at 40 (quoting Vannatta v. Chandler, 810 N.E.2d 1108, 1110-11 (Ind. Ct. App. 2004)).

Constantinos claims that the trial court erred by concluding that comity justified dismissal of his claims against the defendants.  Theodore claims that the cases already decided by the Greek courts against Constantinos should be afforded comity and therefore bar Constantinos's claims under the doctrine of res judicata.  The doctrine of res judicata acts to prevent repetitious litigation of disputes that are essentially the same.  Indianapolis Downs, LLC v. Herr, 834 N.E.2d 699, 703 (Ind. Ct. App. 2005), trans. denied.  The principle of res judicata is divided into two branches: claim preclusion and issue preclusion.  Id.

10

The first of these branches, claim preclusion, applies where a final judgment on the merits has been rendered and acts as a complete bar to a subsequent action on the same issue or claim between those parties and their privies. Id. When claim preclusion applies, all matters that were or might have been litigated are deemed conclusively decided by the judgment in the prior action. Id. The following four requirements must be satisfied for claim preclusion to apply as a bar to a subsequent action: (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies. Id.

The second branch of the principle of res judicata is issue preclusion, also known as collateral estoppel. Issue preclusion bars the subsequent litigation of a fact or issue that was necessarily adjudicated in a former lawsuit if the same fact or issue is presented in the subsequent lawsuit. Id. If issue preclusion applies, the former adjudication is conclusive in the subsequent action, even if the actions are based on different claims. Id. The former adjudication is conclusive only as to those issues that were actually litigated and determined therein. Id. Thus, issue preclusion does not extend to matters that were not expressly adjudicated and can be inferred only by argument. Id. In determining whether issue preclusion is applicable, a court must engage in a two-part analysis: (1) whether the party in the prior action had a full and fair opportunity to litigate the issue and (2) whether it is otherwise unfair to apply issue preclusion given the facts of the

11

particular case. Id. at 704-05. The non-exhaustive factors to be considered by the trial court in deciding whether to apply issue preclusion include: (1) privity, (2) the defendant's incentive to litigate the prior action, and (3) the ability of the plaintiff to have joined the prior action. Id.

In the present case, Constantinos claims that res judicata does not act to bar his current action because none of the prior rulings of the Greek courts determined the precise issue he currently seeks to litigate. That is, he claims that the Greek courts did not decide the issue of ownership of the shares of Beta Steel. He also claims that Theodore admitted that the Greek courts did not decide this issue. Lastly, he claims that he presented evidence from experts in Greek law which created a factual issue as to what the Greek courts did or did not decide and that the trial court improperly resolved this factual issue.

We disagree with each of these arguments. First, it is clear from the language of the Greek court rulings that the issue of the ownership of the shares of Beta Steel was decided. Second, Theodore's alleged admission cannot alter the question of law regarding what the Greek courts decided. Similarly, the question of what the Greek courts did or did not decide is a question of law for the courts, and the opinion of experts cannot turn this legal question into a factual question.[4]

---

[4] Constantinos also complains that the trial court improperly considered matters outside the pleadings in ruling on the motion to dismiss. Generally, in ruling on a motion to dismiss, the trial court should consider only the pleadings. If, however, the trial court considers matters outside the pleading, the motion should be treated as one for summary judgment. Azhar v. Town of Fishers, 744 N.E.2d 947, 950 (Ind. Ct. App. 2001) (citing Ind. Trial Rule 12(B)). Where a trial court treats a motion to dismiss as one for summary judgment, the court must grant the parties a reasonable opportunity to present summary judgment materials. Id. Here, it is clear that Constantinos was able to present materials in support of his

In the Greek inheritance action, which Constantinos now refers to as an accounting action, the Athens Multi-Member Court of First Instance found credible the testimony that Panayiotis, while he was still alive, granted to Theodore the shares of Beta Steel. Appellant's App. p. 384. In affirming this ruling, the Greek Court of Appeals noted that it was proved before the lower court that "Panagiotis Angelopoulos, for the time that he was alive, had transferred, as gifts, most of his assets to his children . . . and [Theodore] became the exclusive owner of the Steel Mill with the name 'BETA' which is based in the U.S.A. . . ." Id. at 1838-39. This ruling was later affirmed by the Greek Supreme Court. This is a clear ruling on the ownership of the shares of Beta Steel.

Still, Constantinos claims that Theodore admitted in a pleading before the Greek Supreme Court that the ownership of Beta Steel was not at issue in the Greek court inheritance action. Specifically, Constantinos claims that Theodore admitted that the *inter vivos* transfer of Panayiotis's assets and the manner in which these transfers were made did not "fall within the subject matter of the [Greek court] trial." Id. at 1965. As Theodore points out, however, Constantinos takes his statements out of context.

The pleading which contains the alleged admission stated that Constantinos's claim of cassation should be dismissed because the Greek trial court's decision sufficiently: (1) established the inheritance acquired by Constantinos and Theodore from their father; (2) described the assets that were given to the parties while they were alive, (3) held that Theodore was not the administrator of Panayiotis's estate abroad, and (4)

___

position, and he does not adequately explain how he was prejudiced by the trial court's consideration of matters outside the pleadings. Therefore, the trial court's actions do not amount to reversible error. See id.

13

recognized that Theodore did not misappropriate Constantinos's inheritance rights. Id. The pleading then states, "The above facts are the only critical [facts] for this instance. The inter vivos provisions [of assets] of our father to us the litigants, the way these transfers were made and other related information [about such transfers] do not fall under the subject matter of this trial." Id. (brackets in original).

We agree with Theodore that this pleading admitted that Panayiotis's action of giving Beta Steel to Theodore as an *inter vivos* gift *was* critical to that case, but that the specific manner of how this was accomplished was not critical. The fact remains that the Greek courts specifically and explicitly found that Panayiotis gave the shares of Beta Steel to Theodore when he was still alive.

Moreover, we disagree with Constantinos that the affidavits of his experts establish that there was a question of fact regarding what the Greek courts did or did not decide. The import of these prior decisions is a question of law to be decided by the courts, not a question of fact to be litigated. Indeed, Constantinos's own complaint in the inheritance action specifically claimed that Panayiotis's estate included Beta Steel and that Constantinos was entitled as Panayiotis's heir to three-eighths of this estate, including Beta Steel. See Appellant's App. pp. 424-30. And in his response to Theodore's motion to dismiss, Constantinos admitted that the Indiana action was "subject to a final determination of the ownership in the [Greek] Inheritance Action[.]" Id. at 1025.

In terms of comity, there is no allegation that the prior Greek court inheritance action did not proceed normally and without delay, and if we were to come to a contrary

14

conclusion, i.e. that Constantinos was entitled to a portion of shares of Beta Steel as an heir to Panayiotis, this would directly conflict with the holding of the Greek courts. And in terms of claim preclusion, the former judgment was rendered by a court of competent jurisdiction, the matter was determined in the prior action, and the controversy adjudicated was between the same parties, at least as far as Constantinos and Theodore are concerned. With regard to issue preclusion, Constantinos had a full and fair opportunity to litigate the issue all the way to the Greek Supreme Court and there is just reason to preclude re-examination of this issue.

By the clear language of the Greek court decision, Constantinos's inheritance action resolved the issue of whether Panayiotis transferred ownership of the shares of Beta Steel to Theodore while Panayiotis was still alive or whether these shares were part of Panayiotis's estate to which Constantinos is entitled to a share as Panayiotis's heir. The Greek courts clearly rejected Constantinos's claim on its merits. Pursuant to the doctrines of both comity and res judicata, Constantinos cannot now relitigate this issue in Indiana courts. And as Constantinos's claims against the other defendants were all derivative of his claim of ownership in the shares of Beta Steel, these claims also fail. We therefore affirm the trial court's order dismissing Constantinos's claims.

## II. Confidentiality of Court-Filed Materials

During the course of this case, the parties entered into an agreed order regarding discovery, which the trial court approved on March 3, 2009. Pursuant to this agreed order, the parties could make good-faith designations of certain discovery materials as

confidential. Such confidential information could be disclosed only to the parties, the court, counsel, experts, and deponents or witnesses. See Appellant's App. p. 228.

Constantinos deposed Theodore on September 8, 2010, but Theodore refused to answer certain questions. This caused Constantinos to file a motion to compel his brother to answer these questions, and in support of this motion, Constantinos filed in court the transcript of the first deposition wherein Theodore refused to answer the questions. Because much of this deposition had been labeled as confidential by Theodore, Constantinos filed a request that the trial court conduct a hearing under Indiana Administrative Rule 9(H) to determine whether the deposition warranted protection from public access. The trial court responded by ordering Theodore to appear for a second deposition and to answer the questions he had refused to answer in the first deposition. The trial court also found that the earlier agreed-to protective order operated to protect the depositions from public access. Constantinos then took a second deposition of Theodore on September 9, 2011. Constantinos filed this deposition with the trial court in support of his response to Theodore's motion to dismiss.

On appeal, Constantinos claims that the trial court erred in concluding that the matters marked by Theodore as confidential were still excluded from public access even though Constantinos had filed them in court. This requires us to examine Indiana Administrative Rule 9(G), which provides: "(1) *Case records*: The following information in case records is excluded from public access and is confidential . . . (c) Information excluded from public access by specific court order." The trial court accepted Theodore's argument that the earlier agreed-to protective order constituted a "specific

court order" excluding information from public access under Administrative Rule 9(G)(1)(c) and that such information is automatically excluded from public access. We disagree.

A similar situation was before our supreme court in <u>Travelers Casualty & Surety Co. v. U.S. Filter Corp.</u>, 895 N.E.2d 114 (Ind. 2008). In that case, as here, the parties had entered into a "Confidentiality Stipulation and Order" that provided a framework under which information shared by the parties could be deemed confidential. <u>Id</u>. at 115. The parties then tendered various documents to the trial court (and the court on appeal) under seal. However, there was no indication that the trial court had complied with the provisions of Indiana Administrative Rule 9 when it approved the confidentiality order. <u>Id</u>. Our supreme court noted, "[a]greements between litigants governing the treatment of information exchanged between them are well recognized as fostering multiple objectives, including reduction of litigation costs, protection of legitimate trade secrets, and protection of recognized forms of privilege. Trial court orders confirming such agreements can likewise help secure these benefits." <u>Id</u>.

But the court also noted that "[m]aterials that litigants tender to a court stand on a very different footing":

> Both the Indiana General Assembly and this Court have adopted public accessibility as the default rule for information submitted to government entities, including the state's courts. The legislature has declared that "all persons are entitled to full and complete information regarding the affairs of government." Ind. Code § 5-14-3-1. Likewise, this Court has adopted rules on public access to court records, "taking into account public policy interests that are not always fully compatible with unrestricted access."

<u>Id</u>. (quoting Ind. Administrative Rule 9(A) (Commentary)).

17

The court further note that Rule 9(G) enumerates the documents and information that are exceptions to the general rule of public access, including information excluded "by specific court order" under Rule 9(G)(1)(c). Id. at 116. But instead of suggesting that these documents are automatically excluded from public access, the court held that "[t]he mechanism for seeking to exclude information of this last sort appears in Rule 9(H)." Id. The court specifically noted that simply because something is privileged and shielded from discovery does not mean that it is also excluded from public access if it is submitted to a court.

> Instead, a party or a non-party who tenders documents or information that would be otherwise privileged must request that the court exclude that particular information from public access. Administrative Rule 9(H) provides a process by which any person affected by the release of information may ask the court to exclude it from public access, requires a public hearing before the trial court can grant such exclusion, and lists the grounds on which the court can do so (such as "significant risk of substantial harm").

Id. Because the party claiming protection in that case had not offered any reason why the privileged materials in that case should be excluded from public access, the court vacated the trial court's order excluding the materials from public view. Id.

Under this holding, even if a trial court has ordered certain materials to be deemed confidential for purposes of discovery, these materials will still be subject to public access unless the trial court complies with Administrative Rule 9(H). This rule states:

> **Prohibiting Public Access to Information in Court Records.**
> (1) A verified written request to prohibit public access to information in a court record, may be made by any person affected by the release of the information. The request shall demonstrate that:
> (a) The public interest will be substantially served by prohibiting access;

18

(b) *Access or dissemination of the information will create a significant risk of substantial harm to the requestor, other persons or the general public*;

(c) A substantial prejudicial effect to on-going proceedings cannot be avoided without prohibiting public access, or;

(d) The information should have been excluded from public access under section (G) of this rule.

The person seeking to prohibit access has the burden of providing notice to the parties and such other persons as the court may direct, providing proof of notice to the court or the reason why notice could not or should not be given, demonstrating to the court the requestor's reasons for prohibiting access to the information. A party or person to whom notice is given shall have twenty (20) days from receiving notice to respond to the request.

(2) A court may deny a request to prohibit public access without a hearing. If the court does not initially deny the request, it shall post advance public notice of the hearing. *A court may grant a request to prohibit public access following a hearing if the requestor demonstrates by clear and convincing evidence that any one or more of the requirements of (H)(1)(a) through (H)(1)(d) have been satisfied.* An order prohibiting public access to information in a court record may be issued by the court having jurisdiction over the record. An order prohibiting public access to information in bulk or compiled records, or in records under the jurisdiction of multiple courts may be issued only by the Supreme Court.

(3) *The court shall balance the public access interests served by this rule and the grounds demonstrated by the requestor.* In its order, the court shall state its reasons for granting or denying the request. *If the court prohibits access, it will use the least restrictive means and duration.* When a request is made to prohibit public access to information in a court record at the time of case initiation, the request and the case information will remain confidential for a reasonable period of time until the court rules on the request. When a request is made to prohibit public access to information in court records that are already publicly accessible, the information may be rendered confidential for a reasonable period of time until the court rules on the request. . . .

Ind. Admin. Rule 9(H) (emphasis added).

Theodore claims that the deposition materials should have remained confidential because the trial court had already approved of the agreed-to protective order, which he

claims would qualify as excludable from public access under Rule 9(G)(1)(c). Our supreme court implicitly disagreed with this position in <u>Travelers</u>, where despite a similar protective order, the court made no indication that this would constitute a specific court order for purposes of Rule 9(G)(1)(c). <u>See</u> 895 N.E.2d at 115-16. Indeed, to hold otherwise would conflate the issue of confidentiality and privilege during discovery with the issue of public access to materials filed in open court, which the <u>Travelers</u> court noted are very different questions. *See* <u>id</u>. at 115.

Here, however, unlike in <u>Travelers</u>, the trial court did enter a specific order in which it concluded that the materials marked confidential during discovery should not be available to the general public. Theodore claims that we should affirm the trial court's order because public access to his depositions would "create a significant risk of substantial harm" to Theodore because of Constantinos's apparent intent to use these depositions to support further legal action in Greece. According to the parties, pre-trial depositions are not permitted in Greece. Thus, Constantinos could use our generous discovery procedures to find out information from Theodore as fuel for further suits overseas. Theodore also claims that information in the depositions regarding how he negotiated the price for Beta Steel should be protected as confidential because it has value to his competitors. He therefore argues that his depositions should remain excluded from public access under Administrative Rule 9(H)(1)(b) because access to this information will create a significant risk of substantial harm to him.

The trial court, however, did not make any such conclusions in its order. Instead, it proceeded from the presumption that exclusion of these materials was "automatic"

20

because of its earlier protective order. As explained in <u>Travelers</u>, this is incorrect. Moreover, Theodore now admits that much of what was covered in the protective order is not excluded from public access and even goes so far as to designate those portions of the depositions he now believes should remain confidential. We therefore reverse the trial court's order regarding public access to Theodore's depositions and remand with instructions that the trial court hold another hearing at which the burden will be on Theodore to demonstrate by clear and convincing evidence to prove how public access to these specific portions of his depositions will create a significant risk of substantial harm to him pursuant to Administrative Rule 9(H).

**Conclusion**

The prior rulings of the Greek courts conclusively establish that Panayiotis gave ownership of Beta Steel to Theodore when Panayiotis was still alive, and Constantinos cannot now relitigate this issue in Indiana courts. As all of Constantinos's legal claims are based on his claim of a right to a portion of Beta Steel as an heir to Panayiotis's estate, all of his claims were properly dismissed. The trial court, however, erred in conflating the issue of confidentiality for purposes of discovery with the issue of restricting public access to materials filed in court, and we therefore reverse the trial court's order regarding public access to Theodore's depositions and remand with instructions that the trial court hold a hearing at which Theodore must prove by clear and convincing evidence that portions of his depositions should not be open to public access pursuant to Indiana Administrative Rule 9.

21

Affirmed in part, reversed in part, and remanded.

NAJAM, J., and BROWN, J., concur.