

FILED

Jun 10 2020, 11:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Natalie F. Weiss
Deputy Attorney General
Indianapolis, Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Eric S. Pavlack
Colin E. Flora
Pavlack Law, LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

State of Indiana, Indiana
Department of Environmental
Management, Indiana State
Department of Health, et al.,

*Appellants-Defendants,*

v.

Cristobal Alvarez, C.A. by next
friend Cristobal Alvarez, et. al.,

*Appellees-Plaintiffs*

June 10, 2020

Court of Appeals Case No.
19A-CT-587

Appeal from the Lake Superior
Court

The Honorable Nanette K.
Raduenz, Special Judge

Trial Court Cause No.
45D05-1803-CT-3

**May, Judge.**

The State of Indiana, the Indiana Department of Environmental Management ("IDEM"), and the Indiana State Department of Health ("ISDH") (collectively, "State Defendants") appeal the trial court's order denying their motion for judgment on the pleadings. State Defendants raise four issues for our review, which we restate as the following three issues:

 i. Whether the Indiana Tort Claims Act immunizes the State Defendants;

 ii. Whether Plaintiffs' claims are barred by the statute of limitations; and

 iii. Whether Plaintiffs pled facts sufficient to state a claim for intentional infliction of emotional distress.

We affirm.

# Facts and Procedural History[1]

In the late-1960s, the City of East Chicago decided to build a large-scale public housing complex that became the West Calumet Housing Complex ("Complex"). The City built the Complex in an industrial area. The land was formerly occupied by the Anaconda Lead Products Company and surrounded by other lead smelting operations. Carrie Gosch Elementary School, which the

---

[1] Given the procedural posture of this case, our recitation of the facts assumes all facts pled in the complaint are true. *See Murray v. City of Lawrenceburg*, 925 N.E.2d 728, 729 (Ind. 2010).

City built in 1958 on land formerly occupied by U.S. Smelter and Lead Refinery, Inc., was located near the Complex. In the late 1990s, the City constructed a new building for Carrie Gosch Elementary on land behind the site of the original building.

[3] In 1985, IDEM found lead contaminated soil near the Complex, and ISDH learned that children who lived at the Complex had high levels of lead in their blood. ISDH and IDEM performed further testing and sampling in 1997, which also revealed lead contaminated soil around the Complex and elevated levels of lead in the blood of children living in the Complex. However, none of the State Defendants notified the residents of the Complex or the parents of students at Carrie Gosch Elementary of the elevated lead levels.

[4] In 1985, the Environmental Protection Agency ("EPA") began testing the land on which the Complex and Carrie Gosch Elementary were built and addressing contamination. In 1993, the EPA entered into an administrative order of consent with U.S. Smelter and Lead Refinery, Inc, designating the area as a Superfund site[2] in need of environmental remediation. On September 3, 2014, the United States and the State of Indiana filed a complaint against the Atlantic Richfield Company ("Richfield") and the E.I. Du Pont De Nemours and

---

[2] The Hazardous Substance Superfund is a trust fund established to carry out the purposes of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"). 26 U.S.C. § 9507. The purpose of CERCLA is to hold polluters responsible for the problems caused by their disposal of hazardous chemicals and make the polluters "bear the costs and responsibility for remedying the harmful conditions they created." *In re: Tutu Water Wells CERCLA Litigation*, 326 F.3d 201, 206 (3rd Cir. 2003), *cert. denied*, 540 U.S. 984 (2003).

Company ("Du Pont"), two entities that either operated or were successors in interest to companies that operated on or around the land where the Complex was built. The government filed a proposed consent decree on the same day it filed the lawsuit. On or about October 28, 2014, the EPA reached a $26 million settlement with the companies to provide cleanup costs.

[5] On July 6, 2016, the EPA sent a flyer to Complex residents notifying them that high levels of lead had been found in yards in the Complex. On July 25, 2016, East Chicago Mayor Anthony Copeland sent a letter to residents of the Complex advising them that the land was contaminated with lead. The letter directed residents to move as soon as possible. On December 4, 2017, Cristobal Alvarez and over three hundred other former residents of the Complex ("Plaintiffs") filed suit against the City of East Chicago, the East Chicago Housing Authority, the East Chicago Department of Public and Environmental Health, and the School City of East Chicago (collectively, "City Defendants"), and the State Defendants. Count III of the complaint alleges negligence.[3] It states the State Defendants and the East Chicago Department of Public & Environmental Health "owed a duty of reasonable care to the Plaintiffs, including without limitation the duty to warn the Plaintiffs of known risks to their health that had the potential to cause serious, life-altering injuries." (App. Vol. III at 73.) Further, Count III alleges:

---

[3] Counts I and II do not contain any allegations against State Defendants.

112. These Defendants each knew that the soil and air in and around the Complex and Carrie Gosch Elementary School were contaminated with dangerous levels of lead, arsenic, and/or other hazardous substances.

* * * * *

119. These Defendants took no action to inform the Plaintiffs or otherwise to safeguard them from the dangerous condition.

120. Each Defendant actually knew or should have known that lead and other hazardous particles have the potential to cause serious harm to the Plaintiffs.

121. As a direct and proximate result of each Defendant's breaches of its duties, Plaintiffs have suffered and continue to suffer financial, physical, mental, and emotional damages.

(*Id*. at 74-75.) Count IV alleges the State Defendants committed intentional infliction of emotional distress. Count V alleges negligent infliction of emotional distress.

On July 9, 2018, State Defendants filed a motion for judgment on the pleadings. State Defendants argued that they were immune from suit pursuant to the Indiana Tort Claims Act ("ITCA"), that Plaintiffs' suit was barred by the statute of limitations, and that the Plaintiffs failed to state a claim for intentional infliction of emotional distress. The trial court held a hearing on State Defendants' motion and denied the motion. The trial court certified the order for interlocutory appeal, and we accepted jurisdiction on April 12, 2019.

# Discussion and Decision

[7] Our review of a judgment on the pleadings is *de novo*. *Loomis v. Ameritech Corp.*, 764 N.E.2d 658, 661 (Ind. Ct. App. 2002), *reh'g denied*, *trans. denied*. Such a motion "tests the sufficiency of the complaint to state a redressable claim" and should be granted "only when it is clear from the pleadings that the non-moving party cannot in any way succeed under the facts and allegations therein." *Circle Centre Dev. Co. v. Y/G Indiana, L.P.*, 762 N.E.2d 176, 178 (Ind. Ct. App. 2002), *trans. denied*. We look solely to the pleadings and accept all well-pleaded facts as true. *Id.* The moving party is deemed to have admitted those facts in favor of the non-moving party and we will draw all reasonable inferences in the non-moving party's favor. *Id.* "When the pleadings present no material issues of fact and the facts shown by the pleadings clearly entitle a party to judgment, the entry of judgment on the pleadings is appropriate." *Book v. Hester*, 695 N.E.2d 597, 599 (Ind. Ct. App. 1998).

## 1. Indiana Tort Claim Act

### A. Discretionary Function Immunity

[8] In 1974, the Indiana General Assembly passed the ITCA, which "granted absolute immunity to governmental entities in a number of specific circumstances, and codified rules of liability for other areas of governmental activity." *Gary Cmty. Sch. Corp. v. Roach-Walker*, 917 N.E.2d 1224, 1227 (Ind. 2009). The ITCA immunities are listed in Indiana Code section 34-13-3-3, including an immunity for the performance of discretionary functions. Ind.

Code § 34-13-3-3(7) ("A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following: . . .The performance of a discretionary function[.]").

[9] The Indiana Supreme Court has adopted a planning-operational test to determine if an act qualifies as a discretionary function under the ITCA. *Jurich v. Ind. Dep't. of Transp.*, 126 N.E.3d 846, 856 (Ind. Ct. App. 2019).

> Planning functions involve the formulation of basic policy characterized by official judgment, discretion, weighing of alternatives, and public policy choices. On the other hand, operational functions involve the execution or implementation of already formulated policy.

*Lee by & through Estes v. Bartholomew Consol. Sch. Corp.*, 75 N.E.3d 518, 526 (Ind. Ct. App. 2017) (internal quotation marks and citations omitted). Planning functions are discretionary and shielded from liability under the ITCA. *Id*. However, operational functions are not shielded from liability. *Id*.

[10] Whether an act is discretionary is a question of law. *City of Beech Grove v. Beloat*, 50 N.E.3d 135, 138 (Ind. 2016). The governmental entity claiming discretionary function immunity bears the burden of demonstrating an act was a planning function as opposed to an operational function. *Id*. The planning-operational "test is designed to 'insulate [ ] only those significant policy and political decisions which cannot be assessed by customary tort standards.'" *Id*. (quoting *Peavler v. Bd. of Comm'rs of Monroe Cty.*, 528 N.E.2d 40, 45 (Ind. 1988)).

[11]  State Defendants argue the decision of when and how to warn citizens of possible lead exposure is a discretionary function. The State Defendants note that unlike the placement of traffic signals, which the government is statutorily required to perform pursuant to Indiana Code section 9-21-4-1, there is not a statutory duty "to notify citizens about exposure to toxic waste[.]" (Appellants' Br. at 18.) While there is not an Indiana case determining whether warning citizens about exposure to hazardous chemicals is a discretionary function under the ITCA, State Defendants direct us to a decision interpreting a similar provision of the Federal Tort Claims Act ("FTCA").

[12]  In *Cisco v. United States*, the Seventh Circuit analyzed whether an action brought by homeowners against the EPA regarding the EPA's alleged failure to warn the homeowners that contaminated dirt had been used as residential landfill was barred by the discretionary function exception to the FTCA. 768 F.2d 788, 788 (7th Cir. 1985). The Seventh Circuit held:

> In deciding not to warn Cisco about the contaminated landfill and in deciding not to remove the contaminated dirt from the landfill, the EPA made political, social and economic judgments pursuant to its grant of authority. Cisco may not challenge those judgments under the FTCA because they fall within the discretionary function exception of 28 U.S.C. § 2680.

*Id*. at 789-90. State Defendants contend that like the EPA's actions in *Cisco*, the State Defendants' decision not to warn residents about high lead levels in the soil was a discretionary function because it required the State Defendants to make political, social, and economic judgments.

However, federal courts do not apply the planning-operational test in evaluating discretionary function immunity under the FTCA. *See Childers v. United States*, 841 F. Supp. 1001, 1019 (D. Mont. 1993) (noting the United States Supreme Court's rejection of the planning-operational test), *judgment aff'd*, 40 F.3d 973 (9th Cir. 1995), *cert. denied*, 514 U.S. 1095 (1995). In addition, the FTCA is interpreted more broadly in favor of immunity than the ITCA. *Compare Robb v. United States*, 80 F.3d 884, 887 (4th Cir. 1996) ("The FTCA, as a waiver of sovereign immunity, is strictly construed, and all ambiguities are resolved in favor of the sovereign."), *with Beloat*, 50 N.E.3d at 138 ("Moreover, this Court has cautioned that discretionary immunity must be narrowly construed because it is an exception to the general rule of liability." (internal quotation marks omitted)). Under the ITCA, the governmental entity bears the burden of demonstrating the applicability of discretionary function immunity. *Beloat*, 50 N.E.3d at 138. Whereas under the FTCA, the plaintiff bears the burden of proving the government entity's conduct does not fall within the discretionary function immunity. *Pieper v. United States*, 713 Fed. Appx. 137, 139 (4th Cir. 2017). Therefore, we are not persuaded by the State Defendants' analogy to the FTCA.

State Defendants also argue "the nature of State Defendants' conduct, the effect on governmental operations and the capacity of the court to evaluate the propriety of the government's action shows that the alleged failure to warn Plaintiffs of the contamination is a discretionary function." (Appellants' Br. at 23.) State Defendants contend the decision to warn the public about

contamination involves weighing budget concerns and assessing priorities. State Defendants maintain that, if they are overaggressive in warning about environmental dangers, it could "cause havoc[.]" (*Id*. at 25.) However, the complaint does not allege any conscious balancing of risks and benefits by the State Defendants; nor does it allege the State Defendants engaged in a decision-making process. Rather, the complaint alleges negligent passivity. (*See* App. Vol. III at 74 ("These Defendants took no action to inform the Plaintiffs or otherwise to safeguard them from the dangerous condition.").)

[15] Discretionary function immunity does not protect a governmental entity from liability "when no policy-oriented decision-making process has been undertaken." *Boyland v. Hedge*, 58 N.E.3d 928, 934 (Ind. Ct. App. 2016). Therefore, we cannot say as a matter of law, based solely on the pleadings, that warning citizens of possible lead exposure is a planning function. The trial court did not err in denying State Defendants' motion for judgment on the pleadings regarding discretionary function immunity. *See Birge v. Town of Linden*, 57 N.E.3d 839, 845 (Ind. Ct. App. 2016) (holding town not entitled to dismissal based on discretionary function immunity under the ITCA).

## B. Vicarious Liability Immunity

[16] The ITCA also grants governmental entities immunity for acts or omissions "of anyone other than the governmental entity or the governmental entity's employee." Ind. Code § 34-13-3-3(10). State Defendants argue they cannot be held liable where the duty to notify the Plaintiffs of the presence of toxic chemicals in the soil fell to the City Defendants. However, the complaint

alleges both the City Defendants and the State Defendants were aware that Complex residents and students at Carrie Gosch Elementary were being exposed to toxic substances, yet none of the defendants warned the Plaintiffs or took steps to reduce exposure. Even though the complaint alleges tortious conduct by both the State Defendants and the City Defendants, the Plaintiffs allege the State Defendants are liable for their own actions. Therefore, the State Defendants are not entitled to judgment on the pleadings on the ground of vicarious liability immunity. *See Gary Cmty. Sch. Corp. v. Boyd*, 890 N.E.2d 794, 801 (Ind. Ct. App. 2008) (holding school corporation not immune because the complaint alleged negligence on the part of the school corporation not a third party), *trans. denied*.

## 2. Statute of Limitations

### A. Under Statute

[17] The State Defendants argue that 109 of the 315 plaintiffs (those who turned 18 years old before December 4, 2015) are barred from filing this lawsuit. Indiana Code section 34-11-2-4 provides that a personal injury action must be commenced within two years of when the cause of action accrues. "Under the discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *DiMaggio v. Rosario*, 52 N.E.3d 896, 905 (Ind. Ct. App. 2016), *reh'g denied*, *trans. denied*. "For a cause of action to accrue, it is not necessary that the full extent of the damage be known or even ascertainable but only that some

ascertainable damage has occurred." *Doe v. United Methodist Church*, 673 N.E.2d 839, 842 (Ind. Ct. App. 1996), *trans. denied*. Statutes of limitation "are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost." *Perryman v. Motorist Mut. Ins. Co.*, 846 N.E.2d 683, 689 (Ind. Ct. App. 2006).

[18] State Defendants argue Complex residents knew or should have known about elevated lead levels and exposure more than two years before the Plaintiffs sued.[4] State Defendants contend that the designation of the area as a Superfund site should have alerted the Plaintiffs to contamination and possible exposure to toxic substances. We will dismiss a complaint at the pleading stage as barred by the statute of limitations only if the complaint states facts that, on their face, indicate the complaint was filed after the statute of limitations period expired. *Chenore v. Plantz*, 56 N.E.3d 123, 126 (Ind. Ct. App. 2016). However, when the complaint states facts indicating the plaintiffs may prevail on a claim notwithstanding the statute of limitations, the question of when the plaintiffs

---

[4] In their reply brief, the State Defendants ask us to rely on the truth of certain statements made in the consent decree and attachments to the decree entered in *United States v. Atlantic Richfield Co.*, 2:14-cv-312 (N.D. Ind. 2014). The Plaintiffs have moved to strike these portions of the State Defendants' reply brief. However, our inquiry is focused on whether the complaint states any set of facts under which the Plaintiffs could succeed. *See Columbus Specialty Surgery Ctr. v. Se. Indiana Health Org., Inc.*, 22 N.E.3d 665, 669 (Ind. Ct. App. 2014) ("the motion for judgment on the pleadings should be granted only where it is clear from the face of the complaint that under no circumstances could relief be granted"). The State Defendants' citations to facts stated in the consent decree are not relevant to this inquiry. Therefore, we do not rely upon the facts stated in the consent decree and cited in the State Defendants' reply brief to resolve this appeal, and by separate order, we deny the Plaintiffs' motion to strike as moot. *See Holland v. Ind. Farm Bureau Ins.*, 110 N.E.3d 369, 371 n.2 (Ind. Ct. App. 2018) (denying motion to strike as moot due to the disposition of the appeal).

discovered or should have discovered their harm becomes a factual dispute and the claims should not be dismissed. *Id.* For a claim to accrue, the plaintiff must be "informed of a reasonable possibility, if not a probability that an injury was sustained as a result of the tortious act of another[.]" *Reed v. City of Evansville*, 956 N.E.2d 684, 691 (Ind. Ct. App. 2011) (internal quotation marks omitted), *trans. denied.* Further, "a person's mere suspicion or speculation as to causation of an injury is insufficient to trigger accrual." *Id.* (internal quotation marks omitted).

[19] Plaintiffs maintain that they did not realize there was a reasonable probability of harm until Mayor Copeland sent the July 2016 letter advising the Complex residents to move. In their complaint, the Plaintiffs state:

> 71. Prior to the letter, each Plaintiff did not know that he or she had been exposed to hazardous levels of lead or other toxins at the Complex.

> 72. Prior to the letter, each Plaintiff did not know that he or she had been injured by his or her exposure to hazardous levels of lead or other toxins at the Complex.

> \* \* \* \* \*

> 77. As the July 6, 2016 EPA flyer acknowledged, "Lead is a naturally occurring heavy metal. It is commonly found at low levels in soil. Low levels of lead can be found in the air, water, food and dust in cities because of the widespread use of lead in man-made products. The federal government regulates the amount of lead in the air, water and soil. The levels of lead at the

> West Calumet Housing Complex are much higher than normal
> levels because of past industrial operations at the property."

> 78. The mere knowledge of lead in the soil meant nothing absent
> an understanding that the levels were dangerous to human health
> and wellbeing.

(App. Vol. III at 68-69.) Therefore, the complaint alleges the Plaintiffs did not recognize that living at the Complex was dangerous because of the high level of lead contamination until July 2016.

[20] In *Rolan v. Atlantic Richfield Co.*, residents of the West Calumet Housing Complex filed suit against Richfield and Du Pont. No. 1:16-CV-357-TLS, 2017 WL 3191791, at *1 (N.D. Ind. July 26, 2017). One of the defendants moved to dismiss the suit on the ground that it was barred by the statute of limitations. *Id.* at *11. However, the district court denied the company's motion. *Id.* at *12. The court stated, "Although the Plaintiffs knew as early as 2012 that the Defendants' conduct was the reason for the clean-up, they did not know or have reason to suspect that the Defendants' conduct had harmed them in any tangible way." *Id.* According to the allegations in the *Rolan* complaint, the summer of 2016 was the first time a government entity advised the Complex residents to relocate. *Id.* The court further stated that determining whether the plaintiffs knew or should have known that their claims accrued more than two years prior to filing suit is a "factually intensive endeavor" inappropriate for a motion to dismiss. *Id.*

State Defendants attempt to distinguish *Rolan* by arguing the Plaintiffs in the case at bar did not have to understand the full extent of their harm for their claim to accrue. However, the EPA flyer quoted in the present complaint notes a low level of lead exposure is unavoidable and not cause for alarm. Therefore, we hold the facts stated in the complaint do not demonstrate it is untimely. *See Chenore*, 56 N.E.3d at 126 (holding complaint should not be dismissed pursuant to Trial Rule 12(B)(6) because Plaintiff alleged facts that statute of limitations period was equitably tolled).

### B. Issue Preclusion

State Defendants also contend the doctrine of issue preclusion prohibits the 109 plaintiffs from suing because Complex residents attempted to intervene in *United States v. Atlantic Richfield Company*, but their motion to intervene was denied. 324 F.R.D. 187, 2018 WL 798188 (N.D. Ind. 2018).

> The doctrine of *res judicata* prevents the repetitious litigation of that which is essentially the same dispute. The principle of *res judicata* is divided into two branches: claim preclusion and issue preclusion. Claim preclusion applies where a final judgment on the merits has been rendered which acts as a complete bar to a subsequent action on the same issue or claim between those parties and their privies.

*French v. French*, 821 N.E.2d 891, 896 (Ind. Ct. App. 2005) (internal citations omitted), *reh'g denied*.

Similarly, issue preclusion, also known as collateral estoppel, "bars the subsequent litigation of a fact or issue that was necessarily adjudicated in a

former lawsuit if the same fact or issue is presented in [a] subsequent lawsuit." *Angelopoulos v. Angelopoulos*, 2 N.E.3d 688, 696 (Ind. Ct. App. 2013), *trans. denied*. However, the "former adjudication is conclusive only as to those issues that were actually litigated and determined therein. Thus, issue preclusion does not extend to matters that were not expressly adjudicated and can be inferred only by argument." *Id.* (internal citation omitted). We consider the following factors in deciding whether issue preclusion should apply: "(1) privity, (2) the defendant's incentive to litigate the prior action, and (3) the ability of the plaintiff to have joined the prior action." *Id.*

[24]     In *United States v. Atlantic Richfield Company*, the United States and the State of Indiana filed a complaint in federal court in 2014 against Richfield and Du Pont, and the governments filed a proposed consent decree on the same day. 324 F.R.D. at 190. After a hearing in the fall of 2014, the court approved the consent decree, entered judgment, and closed the case. *Id.* On November 1, 2016, Complex residents filed a motion to intervene because of the lack of progress made by the EPA in cleaning up the area. *Id.* The court noted that the residents filed suit more than two years after the lawsuit against the two companies had been closed. *Id.* at 192. Further, the residents were put on notice that their rights might be impaired as a result of the lawsuit because the EPA mailed notices to Complex residents before filing suit, held public meetings, and filed documents regarding contamination of the Complex in court. *Id.* Also, the court noted that the original litigating parties in the lawsuit would be prejudiced if the court allowed the residents to intervene and that

allowing the residents to intervene would be impractical. *Id*. at 193. Therefore, the court denied the Complex residents' motion to intervene. *Id*. at 195.

[25] We note the considerations in determining whether to allow intervention in a federal lawsuit are different from those determining whether the statute of limitations bars suit. In deciding whether to allow intervention pursuant to Federal Rule of Civil Procedure 24(a), the court considers whether:

> (1) the application is timely; (2) the applicants have an interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may impair or impede the applicants' ability to protect that interest; and (4) no existing party adequately represents the applicant's interest.

*Id*. at 191. Thus, intervention in a federal lawsuit requires a more complex balancing of factors than determining whether suit is barred by a statute of limitations, which simply involves determining when the plaintiff knew or should have known about the harm. *See id*. (Whether to allow intervention is not "a binary inquiry. Instead . . . it involves digesting various bits of information and arriving at a reasonable conclusion[.]") Consequently, the statute of limitations issue was not "expressly adjudicated" in *United States v. Atlantic Richfield Company* and the doctrine of issue preclusion does not bar the Plaintiffs' suit. *See Indianapolis Downs, LLC v. Herr*, 834 N.E.2d 699, 704-05 (Ind. Ct. App. 2005) (holding issue preclusion did not bar litigation of unjust enrichment claim by plaintiff that was not a party in previous lawsuit), *trans. denied.*

# 3. Intentional Infliction of Emotional Distress

[26] To establish a claim of intentional infliction of emotional distress, a plaintiff must prove by a preponderance of the evidence "that the defendant: (1) engage[d] in extreme and outrageous conduct (2) which intentionally or recklessly (3) cause[d] (4) severe emotional distress to another." *Westminster Presbyterian Church of Muncie v. Cheng*, 992 N.E.2d 859, 870 (Ind. Ct. App. 2013), *trans. denied*. "It is the intent to harm one emotionally that forms the basis for the tort." *Bradley v. Hall*, 720 N.E.2d 747, 752 (Ind. Ct. App. 1999). The conduct must be particularly deplorable to meet the extreme and outrageous requirement.

> Conduct is extreme and outrageous: 'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!''

*Conwell v. Beatty*, 667 N.E.2d 768, 777 (Ind. Ct. App. 1996) (quoting *Restatement (Second) of Torts* § 46 cmt. d (1965)), *reh'g denied*. If reasonable persons can differ regarding the extremity and outrageousness of certain conduct, then the matter should be left to a jury's determination. *See Bradley*, 720 N.E.2d at 753 (reversing grant of summary judgment because "[r]easonable persons may differ on the questions of whether Hall's conduct was extreme and outrageous and, if so, whether that conduct caused Bradley to suffer severe emotional distress").

State Defendants argue Plaintiffs fail to allege facts sufficient to state a claim for intentional infliction of emotional distress because the alleged conduct of State Defendants was not extreme and outrageous. However, as the Plaintiffs note in their brief, a civilized society should not be expected to tolerate "a government standing silent while knowingly exposing its most-vulnerable citizens to toxic substances when reasonable alternatives [exist]." (Appellees' Br. at 54.) A reasonable person could conclude that such conduct, if true, is extreme and outrageous. *See Mitchell v. Stevenson*, 677 N.E.2d 551, 564 (Ind. Ct. App. 1997) (holding widow's disinterring deceased husband's remains and removing his headstone right before husband's daughter, sister, and mother visited the grave and after widow agreed husband's daughter would assume primary responsibility for maintaining the grave constituted extreme and outrageous conduct), *trans. denied*.

State Defendants also contend Plaintiffs fail to state a claim for intentional infliction of emotional distress because the complaint does not allege any intentional action by an individual State actor. Rather, the complaint ascribes intent to the State Defendants. However, the case is at the pleading stage, and the Plaintiffs have not yet been able to conduct discovery. Discovery will allow the Plaintiffs to determine what, if any, individual State employees acted intentionally to cause Plaintiffs emotional distress. Additionally, we have allowed intentional infliction of emotional distress claims to proceed against governmental entities before. *See Johnson ex rel. Ind. Dept. of Child Services v. Marion Co. Coroner's Office*, 971 N.E.2d 151, 162-63 (Ind. Ct. App. 2012)

(holding coroner's office not entitled to summary judgment because genuine issue of material fact existed regarding whether the manner of removing a dead body amounted to extreme and outrageous conduct), *trans denied*. Therefore, the trial court did not err in denying the State Defendants' motion for judgment on the pleadings regarding intentional infliction of emotional distress.

# Conclusion

[29] State Defendants are not entitled to judgment on the pleadings pursuant to the ITCA. It is not clear from the face of the complaint that warning the Plaintiffs about exposure to dangerous levels of lead was a discretionary function. Further, while the Plaintiffs sue both State Defendants and City Defendants, the complaint alleges State Defendants are liable for their own acts. Additionally, it is not clear from the face of the complaint that the Plaintiffs brought the lawsuit outside the statute of limitations period or that their claims are barred by issue preclusion. Also, Plaintiffs recite sufficient facts to state a claim for intentional infliction of emotional distress. Therefore, we affirm the trial court's denial of State Defendants' motion for judgment on the pleadings.

[30] Affirmed.

Crone, J., and Pyle, J., concur.